UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Docket No.: 23-CR-22-LEW |
| v. | : | |
| | : | |
| CHRISTOPHER MEZA | : | |

**MR. MEZA'S MEMORANDUM IN AID OF SENTENCING**

**NOW COMES** the Defendant, Christopher Meza (hereinafter sometimes "Mr. Meza", "Christopher" or "Defendant"), by and through undersigned counsel, and hereby submits his memorandum in aid of sentencing.

*I.     Summary*

Mr. Meza asks the Court to consider sentencing him to a non-Guideline, or "variant" sentence of 120 months, which is the statutory, mandatory minimum sentence for three of the counts of conviction, followed by five years of supervised release based on application of the sentencing factors set out in 18 U.S.C. § 3553(a), the nature and circumstances of the offense and Mr. Meza's personal characteristics. *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008).

*II.    The Sentencing Process*

The Supreme Court in *Gall v. United States*, 128 S. Ct. 586 (2007) and the First Circuit in *U.S. v. Martin*, have established and reiterated the sentencing process we are to follow. The sentencing determination begins with the calculation of the advisory sentencing range. This includes the appropriateness of any

1

recognized Guideline departures. *Martin* at 91. The court then hears from the parties on a proper sentence considering the case and defendant specific facts, weighing the applicability of the factors delineated at 18 U.S.C. § 3553(a). The final sentence rests with the explained determination of the Court. *United States v. Jimenez-Beltre*, 440 F.3d 514, 518-19 (1st Cir. 2006)(*en banc*). A sentencing judge may additionally reject the Guideline range on the basis of a policy disagreement with the Guidelines. *United States v. Boardman*, 528 F.3d 86, 87 (1st Cir. 2008). On review, *Gall* directs the circuit to look to the procedural soundness and substantive reasonable of the sentence. *United States v. Thurston*, 544 F.3d 22, 24-25 (1st Cir. 2008) citing *Gall*, 128 S. Ct. At 597.

The First Circuit reiterates, "[t]here is no single reasonable sentence in any particular case but, rather, a universe of reasonable outcomes," *United States v. Walker*, 665 F.3d 212, 234 (1st Cir. 2011), and "[w]e generally respect the district court's sentence as long as the court has provided a plausible explanation, and the overall result is defensible". *United States v. Innarelli*, 524 F.3d 286, 292 (1st Cir. 2008); *United States. v. Prosperi*, 686 F.3d 32, 43 (1st Cir. 2012)(J. Lipez). The hallmarks of a substantively reasonable sentence are a plausible sentencing rationale and a defensible result. *United States v. Rivera-González*, 776 F.3d 45, 51 (1st Cir. 2015).

### III. The History and Characteristics of Mr. Meza Support the Imposition of a Below Guidelines Sentence.

#### A. <u>Christopher Meza Background.</u>

Mr. Meza is very young. He had just turned 20 years old at the time of the conduct alleged by the government. *See* ECF #98, January 23, 2024 Revised Presentence Investigation Report (hereinafter "PSR") at p.3. His upbringing lacked any strong male influence. His biological father died of a suspected drug overdose. *Id.* at ¶43. His father had a long criminal history, a long substance abuse history and gang affiliations. *Id.* The last contact Christopher had with his father was at approximately age 5 when he visited him in prison. *Id.* at ¶43.

Mr. Meza's mother (hereinafter sometimes "Alicia" or "Alicia Brown") has had multiple relationships with men as described in the PSR. First, as noted, she became involved with a man affiliated with gangs and drugs and that relationship produced Christopher in 2000. In or around 2010, she was involved in another relationship that produced a half-sister to Mr. Meza. *Id.* In 2015, she married a different man, Joseph Brown, and that relationship produced three additional half siblings.

Relationship variability like this would have been difficult enough for Mr. Meza however, as the PSR discusses, "at the age of 6 or 7, … [Christopher] … was repeatedly sexually abused over the course of a few months by the teenage son of

3

his mother's boyfriend"[1]. *Id.* at ¶44. Mr. Meza never reported this abuse because the perpetrator threatened him. Mr. Meza's mother confirmed her suspicion that Christopher had suffered abuse when she spoke to the probation officer in connection with the preparation of the PSR. More specifically, she "recalled visiting with her boyfriend and his family in about 2006 .... and found ... [Christopher] ... and her then-boyfriend's son ... in the closet in their underwear". *Id.*

In his teen years, Mr. Meza was reclusive, described by his mother as a "'homebody' ... [that] ... did not go out often ... [and] ... would rather play video games and interact with friends on line." *Id.* at ¶47. She recalls Christopher becoming "involved" with a female through online chat sites when he and the female were approximately "13 or 14". *Id.* Importantly, given the nature of Mr. Meza's relationship with MV[2] in this case, Mr. Meza's mother recalls the online relationship as having a "negative impact ... on .... [Christopher] ... emotionally," reporting he felt a "<u>significant need to rescue</u> the female". *Id.* (emphasis added). The fact Mr. Meza, some six or seven years later, engaged in another significant online relationship is consistent with his mother's description of a "homebody" who occupied himself in some virtual reality while escaping feelings of boredom, sadness (as a victim of abuse might feel) or social anxiety experienced in "the real world".

---

[1] The PSR identifies the fact that Mr. Meza "was sexually abused around the age of 6" as a factor that may warrant a sentence outside of the advisory guideline system. *Id.* at ¶72.

[2] The minor victim in this matter will be referred to herein as "MV" in order to protect his privacy.

Indeed, eight months of the approximately 10 month relationship between Mr. Meza and MV as described in the PSR existed only online with no face to face contact of any kind. Moreover, "law enforcement determined that MV had been in communication with a second minor (SM)" in addition to Mr. Meza "via Discord". *Id.* at ¶4. "According to SM, MV expressed a desire to run away from home citing his gender identity causing friction between him and his parents and alleged abuse"[3]. *Id.* "SM reported he, MV, and .... [Mr. Meza] ... devised a plan" for MV "to leave his mother's home, meet up with SM then wait for ... [Mr. Meza] ... to arrive in Maine, where they would all travel together", in essence "rescuing" MV from his home and echoing Mr. Meza's prior online experience which his mother described as involving a "significant need to rescue". *Id.* at ¶5 & ¶47.

Residing in an alternate reality and devoting so much time to online interactions as compared to the "real world" may also be consistent with another theme, discussed in the PSR[4] - Mr. Meza's seeming immaturity. The PSR cites Mr. Meza's seeming immaturity (he is "emotionally young despite his age") as a factor that may warrant a sentence outside the advisory guideline system. That assertion is based upon Alicia's characterization that Christopher, "despite his age ... remains emotionally younger ... [s]he anticipated a significant increase in maturity ... after

---

[3]     It is worth noting that Mr. Meza's mother has "questioned ... [whether Mr. Meza] ... struggle[s] with his sexual identity, but they have never had the conversation, as ... [he] ... is very private and does not share easily". *Id.* at ¶51.

[4]     And which the defense anticipates will be confirmed in sentencing support materials provided to the Court prior to sentencing.

5

being in the military, but instead appears to have the same maturity level he did when he was in high school". *Id.* at ¶51.

Finally, there is the specter of undiagnosed mental health issues. Mr. Meza recalled "'poor quality attempts' to commit suicide in 2021 and 2022" because although it is unclear whether he was ever given a formal diagnosis, he reported suffering with anxiety and depression and his "life was terrible ... then". *Id.* at ¶51.

Mr. Meza has no criminal history at all. He has no juvenile involvement with the criminal justice system. He has no adult convictions. He has no pending matters. He enlisted in the United States Army shortly after graduating from high school. He traveled abroad to Romania with the Army all in service to this nation. He was honorably discharged after a three year term. He has a family that is supportive as the defense believes will be apparent at the sentencing hearing.

The Guidelines do not constrain this Court's use of Christopher's mitigating evidence. In the 1992 amendment cycle, the United States Sentencing Commission added U.S.S.G. § 5H1.12 of the Guidelines, which states: "lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted."

Despite this, 18 U.S.C. § 3553(a) requires judges to consider "the history and characteristics of the defendant" and § 3661 adds the companion language that, "[n]o limitation shall be placed on the information concerning the background, character, and conduct that may be considered for purposes of sentencing." Moreover, after *Booker*, there is no longer any need for a defendant to show extreme

abuse or neglect to avoid the strictures of § 5H1.12. Thus, not surprisingly, courts have considered, with increasing frequency, childhood trauma as a factor for imposing a variant sentence below the Guidelines range. *See* Miko Bagaric et al., *Trauma and Sentencing: The Case for Mitigating Penalty For Childhood Physical and Sexual Abuse*, 30 Stan. L. & Pol'y Rev. 1, 10-11 (2019)(collecting and analyzing data).

### B. Interaction of the Advisory Guidelines Sentencing Range and the Applicable Statutory, Mandatory Minimum Sentences.

The Total Offense Level is 32. *See* PSR at ¶36. At a Criminal History of I, the advisory guidelines sentencing range is 121 months to 151 months. *Id.* at ¶58. The statutory, mandatory minimum term of imprisonment for three of the counts of conviction is 10 years (120 months). *See* 18 U.S.C. §§ 2422(b) & 2423(a). The other two counts carry no mandatory minimum and a statutory maximum of 30 years.

This court recently sentenced Nicholas Wood to 7 years (84 months), 3 years less than the lowest possible sentence Mr. Meza can receive. *See United States v. Nicholas Wood*, Docket No. 22-CR-94-LEW. Mr. Wood was originally charged (among other things) with offenses under 18 U.S.C. § 2422(b)[5], just like Mr. Meza. *Id.* at ECF #2.

Undersigned counsel has followed Mr. Wood's case and understands from publicly available government filings that his alleged obstruction was a significant

---

[5] These charges were dismissed at sentencing as the result of a plea agreement. *See* ECF at ##S-314806, 168 & 169.

factor in that case. *See* "Government Sentencing Memorandum", ECF at #147, p.12 "[h]ere the defendant deleted social media accounts and the associated data from his phone, knowing that federal agents were investigating [him]" and deleted a Snap account "[b]ut this destruction of evidence is not the only obstruction .... [he] blamed another person".

No similar facts are present here. Indeed, the evidence presented at trial shows that Mr. Meza waived his *Miranda* rights, voluntarily interviewed with Army CID, consented to the search of his apartment and consented to a search of his phone, etc.

Moreover, Mr. Wood, in contrast with Mr. Meza, was a Criminal History Category III with at least one suggestion, again taken only from publicly available government filings, that Mr. Wood had previously "raped a 14-year-old girl"; "[t]aken as a whole, there is a strong indication that Mr. Wood" in another incident "knowingly assaulted a 14-year-old girl." *Id.* at p.6.

As a result of the mandatory minimum sentence of 120 months, Mr. Meza cannot avail himself of the significant mitigating factors here in any meaningful way other than to argue that they support a non guideline or variant sentence below the low end of the advisory guidelines range which, again, is 121 months.

### C. <u>Vulnerability in Prison.</u>

Vulnerability in prison is recognized as a factor the court may consider in crafting an appropriate sentence. *Koon v. United States*, 518 U.S. 81 (1996)(police officers convicted of civil rights crimes); *United States v. Gonzalez*, 945 F.2d 525 (2d

Cir. 1991) (departure affirmed for defendant who had "softness of features" which would make him prey to prisoners); *United States v. Lara*, 905 F.2d 599 (2d Cir. 1990) (departure from 10 to 5 years upheld for defendant whose youthful appearance and bisexuality made him particularly vulnerable to victimization, a factor not adequately considered by the Guidelines); *United States v. Long*, 977 F.2d 1264 (8th Cir. 1992) (court departed from 46 months to one year home detention based on potential victimization in prison); *United States v. Parish*, 308 F.3d 1025 (9th Cir. 2002) (eight level departure granted in child pornography case in part because defendant had "high susceptibility to abuse in prison" due to his demeanor, his naiveté, and the nature of the offense); *United States v. Ruff*, 998 F. Supp. 1351, (M.D. Ala. 1998)(Ruff would be especially vulnerable to sexual victimization in prison)[6].

Mr. Meza is 5',5" and weighs 125 pounds. PSR at ¶50. Moreover, he is "emotionally young". *Id.* at ¶72. A below guidelines sentence is justified in part by the serious risk Christopher faces while incarcerated. That risk increases over time, both due to continued exposure, and due to the constant turnover of other

---

[6] The court stated, "The horrors experienced by many young inmates, particularly those who … are convicted of nonviolent offenses, border on the unimaginable." *Ruff* at 1355-1356; *see also* David M. Siegal, *Rape in Prison and AIDS: A Challenge for the Eighth Amendment Framework of Wilson v. Seiter*, 44 Stan. L. Rev. 1541, 1544 (1992) (Homosexual rape within male prisons occurs with frightening frequency and brutality.) (citing studies and statistics); Charles M. Sennott, *Prison's Hidden Terror*, Boston Globe, May 1, 1994, at B1 (In American prisons "rape is an entrenched culture tacitly accepted by much of the criminal justice system" and noting that there are 200,000 to 300,000 sexual assaults each year on the 1.3 million male inmates in American prisons).

inmates bringing new threats into the facility.

10 years in federal prison with five years of supervised release, as suggested by the defense, is a very significant sentence for a case with these facts where a jury deliberated for nearly 7 hours over two days, after trial.

## IV. *Conclusion*

Given Mr. Meza's youth, his status as a victim of sexual abuse at approximately age 6, his emotional immaturity, his potential vulnerability in prison and his complete lack of any criminal history, among other things, the defense respectfully recommends a sentence of 120 months followed by an extended period of supervised release (the defense suggests 5 years). A total of 15 years either imprisoned or on supervised release is a long sentence which meets the goals of sentencing and is sufficient but not greater than necessary, accounting for the facts of this case.

Respectfully submitted,

Dated: February 9, 2024

/s/ James S. Nixon
James S. Nixon, Esquire
Assistant Federal Defender
Office of the Federal Defender
23 Water Street, Suite 206
Bangor, Maine 04401
Attorney for Defendant

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Docket No.: 23-CR-22-LEW |
| v. : | |
| : | |
| CHRISTOPHER MEZA : | |

## **CERTIFICATE OF SERVICE**

    I, James S. Nixon, Esquire, Assistant Federal Defender, Office of the Federal Defender, attorney for the Defendant, hereby certify that on February 9, 2024, I electronically filed Mr. Meza's Memorandum in Aid of Sentencing with the Court via the CM/ECF electronic filing system which will send notification of such filing via said system electronically on the 9th day of February 2024, to the following persons:

Chris Ruge, Assistant U.S. Attorney
U.S. DEPARTMENT OF JUSTICE
202 Harlow Street, Rm 111
Bangor, Maine  04401
Chris.Ruge@usdoj.gov

Stacy Laflin, Officer
U.S. Probation & Pretrial Services Office
202 Harlow Street, Rm 209
Bangor, ME 04401
Stacy.Laflin@mep.uscourts.gov


Dated: February 9, 2024        /s/ James S. Nixon
                                              James S. Nixon, Esquire
                                              Assistant Federal Defender
                                              Office of the Federal Defender
                                              23 Water Street, Suite 206
                                              Bangor, Maine 04401
                                              Attorney for Defendant