**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

UNITED STATES OF AMERICA

v.

CHRISTOPHER MEZA

No. 1:23-cr-00022-LEW

**GOVERNMENT SENTENCING MEMORANDUM**

The government respectfully submits this memorandum to aid the Court in sentencing, and submits that a mid-guideline to high-guideline sentence is appropriate in this case, particularly because it involved the repeated transport of a child across state lines against the consent of the child's parents.

**1. The conduct in this case is serious and harmful.**

Mr. Meza engaged in a months-long course of conduct to entice the minor victim in this case. That course of conduct, as described at trial, included acts amounting to other crimes, including the production of child pornography and the transfer of obscene materials to a minor. Thus, what Mr. Meza tried to paint as "fantasy" or make-believe in his arguments at trial were nothing so innocent—they were crimes themselves.

Moreover, even though the first few months of the relationship were consigned to electronic communications, including video and voice communications, Mr. Meza's object in these communications remained clear and constant: engaging in a real-world sexual relationship with a minor who was 13 and would be 14 when they met in person.

**2. Meza's conduct was deliberate, purposeful, and repeated.**

Mr. Meza took substantial steps to bring this sexual relationship to fruition, including twice travelling to Maine and then taking the minor child across state lines to engage in sex. The first time he did so he was caught before he could consummate the object offense—not just caught, but caught in a hotel room with the child, on a bed.

The child was then taken by police back the parents' custody.   Although this event started the federal investigation, there was not immediately enough evidence for the Massachusetts police to charge Mr. Meza with a crime. As Mr. Meza himself observed, had the police known about the alcohol he had brought with him for this hotel meeting, it would have been a "different story."

But this first substantial brush with the law was not enough for Mr. Meza. As he said in his recorded interview with SA Rolando "I didn't learn my lesson . . . I really didn't."   And so, two months later he did it again, this time bringing the child all the way back to Texas, where Meza kept the child alone in an unfurnished apartment, periodically returning to use the child for his sexual gratification.

At trial, Mr. Meza attempted to deflect responsibility for his actions, arguing to the jury that the minor was not enticed to do anything.   Meza's implication was apparently that because a 13-year-old child bristled at home life, that the child got the benefit of the bargain by leaving the state with Mr. Meza.   But this misses the gravamen of the law statute itself.   Adults are enticed into sex regularly, sometimes through interstate communications.   The crime is in enticing a *child* to do it.   Adults frequently travel across state lines together with the expectation of a romantic getaway.   The crime is doing so with a *child* where the sex would itself be *illegal*.   Promising a child freedom, or Disney World, or a road trip, or sex itself aren't beyond the scope of enticement when the child already wants those things; it is the crime. Accordingly, none of Mr. Meza's conduct can be cast as innocent or romantic under the facts of this case. They were criminal, Mr. Meza well knew it, and that knowledge did not deter him.

### 3.  Mr. Meza's age does not warrant a downward variance under the facts of this case.

Potentially the most salient issue in Mr. Meza's favor is his own relatively young age.   He was not himself far into majority at the time of the offenses. But he was, as the Discord records make clear, aware of the law and the illegality involved in the specific age difference between him and the child. And he was also aware that this age difference placed his sexual relationship with that child in category that was both illegal and uncondoned by others, including his and the child's age-peers. He acknowledged that if the minor lived with him on base, Meza's roommate would report him due to the age difference. At the same time, a peer of the minor's also was concerned about the age difference and the danger it presented to the minor. These matters were discussed at length in the Discord chats.

### 4.  Mr. Meza's statements to law enforcement show his consciousness of guilt at the time.

Mr. Meza's knowledge of the wrongfulness of his actions is reflected in his interviews with police, where he tried to tailor his admissions to what the police already knew, and attempted to explain away his actions as just trying to "help out a friend," or otherwise rescue a child from a purportedly bad situation. But, as Mr. Meza candidly admitted, the child's home situation was nothing like the one Meza described as his justification for taking the child across state lines.   And even if it was, it would not give Mr. Meza, of all people, the right or the responsibility to take the child into his own custody. And it certainly would not give him the right to have sex with that child. In the end, Mr. Meza's statements to police about his heart being "in the right place" only show his disingenuousness when confronted with the facts, and thereby his acute knowledge

3

of the wrongfulness of his actions at the time he undertook them.

### 5. Defendant's claims of his own childhood should not affect the sentence.

The PSR references the defendant's unverified and never-before reported childhood abuse as a potential basis for a downward variation. The government makes two observations in this regard. First, there is no explained connection between being the victim of abuse and subsequently visiting that abuse upon others. This vague parallel does nothing to explain Mr. Meza's conduct, and serves mainly to slander child sex abuse victims as a class, insinuating that victims are somehow more likely to be child-predators simply because they were themselves victims. There is nothing in the record of this case to support this canard. Second, even if being a child victim himself did make Mr. Meza more likely to seek sex from children, this would serve only to underscore his future dangerousness. In either case, the purported abuse Mr. Meza suffered is, at best, an ambivalent factor.

### 6. Conclusion

Nothing in the record of this case indicates that Mr. Meza has yet "learned [his] lesson," or that he is capable of doing so. Accordingly, a guideline sentence that take into consideration the seriousness of the offenses, the repeated nature of the conduct, and the abject disregard for well-being and feelings of both the minor and the minor's parents, is fully appropriate in this case. While there is but one victim in the counts of conviction, Mr. Meza has proven that protection of society from his future crimes is a significant consideration.

Respectfully submitted, this 9th day of February 2024.

DARCIE N. MCELWEE
UNITED STATES ATTORNEY

**BY:    /s/ CHRIS RUGE**
CHRIS RUGE
Assistant U.S. Attorney
United States Attorney's Office
202 Harlow Street, Suite 111
Bangor, ME 04401
(207) 945-0373
Chris.ruge@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2024, I electronically filed the attached pleading using the CM/ECF system which will send notification of such filing(s) to the following:

James S. Nixon, Esq., at <u>james_nixon@fd.org</u>

Darcie N. McElwee
United States Attorney

BY:   /s/ Chris Ruge
Chris Ruge
Assistant U.S. Attorney
United States Attorney's Office
202 Harlow Street, Suite 111
Bangor, ME 04401
(207) 945-0373
<u>Chris.ruge@usdoj.gov</u>

6